United States District Court
for the
Eastern District of New York

| | |
|---|---|
| U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST <br><br> Plaintiff <br> v. <br><br> BARRY BAIRD, MAGGIE H. BAIRD AKA MAGGIE BAIRD, COMMISSIONER OF SOCIAL SERVICES OF SUFFOLK COUNTY, CLERK OF THE SUFFOLK COUNTY TRAFFIC & PARKING VIOLATIONS AGENCY <br><br> Defendant(s) | Civil Action No. 18-cv-3542 <br><br> **COMPLAINT** |

Plaintiff, by its attorneys Gross Polowy, LLC, for its complaint against the Defendants allege as follows:

## INTRODUCTION

1. This action is brought pursuant to New York Real Property Actions and Proceeding Law (RPAPL) Article 13, to foreclose a Mortgage encumbering 51 Totten Avenue, Deer Park, NY 11729, together with the land, buildings, and other improvements located on the Property ("Property"). The legal description of the Property is attached as Schedule A.

## PARTIES

2. Plaintiff is U.S. Bank Trust, N.A., in its capacity as Trustee for the LSF9 Master Participation Trust. U.S. Bank Trust, N.A. is a national banking association with its main office at 300 East Delaware Avenue, 8th Floor, Wilmington, DE 19809. U.S. Bank Trust N.A. is empowered to hold, manage, and dispose of assets of the LSF9 Master Participation Trust and to prosecute legal actions on behalf of the LSF9 Master Participation Trust, including this mortgage foreclosure action. U.S. Bank Trust N.A. has legal title to and manages the assets of the LSF9 Master Participation Trust, and controls the litigation on behalf of the LSF9 Master Participation Trust.

3. Plaintiff is the owner and holder of the subject Note and Mortgage or has been delegated authority to institute this Mortgage foreclosure action by the owner and holder of the subject Note and Mortgage. Attached here as Schedule B is a copy of the original note.

4. U.S. Bank Trust, N.A. is empowered to hold, manage and dispose of assets of the Trust and to prosecute legal actions on behalf of the LSF9 Master Participation Trust, including this mortgage foreclosure action.

5. U.S. Bank Trust, N.A. has legal title to and manages the assets of the LSF9 Master Participation Trust, and controls the litigations on behalf of the LSF9 Master Participation Trust.

6. Defendant Barry Baird is a citizen of New York, and the owner of the Property.

7. Defendant Maggie H. Baird a/k/a Maggie Baird is a citizen of New York, and the owner of the Property.

8. Defendant Commissioner of Social Services of Suffolk County is a county agency existing under the laws of New York with its principal place of business in New York, and the holder of a lien encumbering the Property, which is subject and subordinate to Plaintiff's Mortgage.

9. Defendant Clerk of the Suffolk County Traffic & Parking Violations Agency is a county agency existing under the laws of New York with its principal place of business in New York, and the holder of a lien encumbering the Property, which is subject and subordinate to Plaintiff's Mortgage.

10. The Defendants claim an interest or lien encumbering the Property, which is either subordinate to Plaintiff's Mortgage, or paid in full, equitably subordinated, or adverse to Plaintiff's Mortgage. The interest or lien of each defendant is attached as Schedule C.

11. The interest or lien of any governmental entity is attached as Schedule D.

**STATEMENT OF JURISDICTION**

12. Federal subject matter jurisdiction exists pursuant to 28 USC §1332 because complete diversity exists among the Plaintiff and the Defendants and the amount in controversy, without interest and costs, exceeds the $75,000.00.

**VENUE**

13. Venue is proper pursuant to 28 USC §1391 because the Property is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

**FACTUAL BACKGROUND**

14. On March 30, 2006, Barry Baird and Maggie H. Baird a/k/a Maggie Baird executed and delivered a Note whereby Barry Baird and Maggie H. Baird a/k/a Maggie Baird

promised to pay the sum of $284,702.00 plus interest on the unpaid amount due.

15. As security for the payment of the Note Barry Baird and Maggie H. Baird AKA Maggie Baird duly executed and delivered a Mortgage, in the amount of $284,702.00 which was recorded as follows.

Recording Date: June 6, 2006
Book 21312/Page 663
Suffolk County Clerk

16. The Mortgage was subsequently assigned to Nationstar Mortgage LLC.

17. The Mortgage was subsequently assigned to U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust.

18. Barry Baird and Maggie H. Baird AKA Maggie Baird failed to make payment in accordance with the terms of the Note and Mortgage by not making the payment that was due on August 1, 2012 and subsequent payments.

19. There is now due and owing on the Note and Mortgage the following amounts:

Principal Balance: $275,223.86
Interest Rate: 6.875%
Date Interest Accrues from: July 1, 2012

There is now further due and owing on said mortgage the following deferred amount:

Deferred Balance:$130.48
Interest Rate: 0%

together with late charges, monies advanced for taxes, assessments, insurance, maintenance, and preservation of the Property, and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure. The interest rate stated above may change in accordance with the adjustable rate feature of the Note.

20. In order to protect the value of the Property and its rights in the Property, the Plaintiff may have to pay taxes, assessments, water charges, insurance premiums, and other charges. Plaintiff requests that any amount it pays, together with interest, be included in the total amount due.

21. Plaintiff has complied with the notice provision of the Mortgage and RPAPL Section 1304 and filed the information required by RPAPL Section 1306. The Mortgage was originated in compliance with all provisions of Section 595-a of the New York Banking Law and any rules or regulations promulgated thereunder, and, if applicable, Sections 6-l or 6-m of the Banking Law.

22. No action was brought to recover any part of the Mortgage debt or if any such action is pending final judgment for Plaintiff was not rendered and it is the intent of the Plaintiff to discontinue it.

**WHEREFORE, PLAINTIFF DEMANDS**:

a. Judgment accelerating the maturity of the debt and determining the amount due Plaintiff for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest;
b. A referee be appointed to sell the Property at auction to the highest bidder, in accordance with to RPAPL Article 13;
c. The interest of the defendants and all persons claiming by or through them be foreclosed and their title, right, claim, lien, interest or equity of redemption to the Property be forever extinguished;
d. The Plaintiff be paid out of the sale proceeds the amounts due for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the Property, and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest, and that the sale proceeds be distributed in accordance with to RPAPL Article 13;
e. The property be sold in as is condition, subject to the facts an inspection or accurate survey of the Property would disclose, covenants, restrictions, easements and public utility agreements of record, building and zoning ordinances and violations, and the equity of redemption of the United States of America;
f. Plaintiff may purchase the Property at the sale;
g. A receiver be appointed for the Property, if requested by Plaintiff;
h. If the Plaintiff possesses other liens against the Property, they not merge with the Mortgage being foreclosed and that Plaintiff, as a subordinate lien holder, be allowed to share in any surplus proceeds resulting from the sale;
i. That the Court award Plaintiff additional relief that is just, equitable and proper.

Dated: May 31, 2018
Westbury, New York

By:
/SJV/
Stephen J. Vargas, Esq.
Attorneys for Plaintiff
900 Merchants Concourse, Suite 412
Westbury, NY 11590
Tel.: (716) 204-1700

## **Schedule A**

Attached here as Schedule A is a copy of the original note. If applicable, certain non-public personal information has been redacted from the attached document.

, LOAN # █████

# ADJUSTABLE RATE NOTE

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

MARCH 30, 2006           DEER PARK                                   NY
       [Date]                    [City]                            [State]
51 TOTTEN AVE, DEER PARK, NY 11729-3215

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 284,702.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.875 %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. Interest will be calculated on a 360 DAY basis.

## 3. PAYMENTS

*(Please check box for interest-only payments.)*
[X] Beginning on the FIRST day of JUNE, 2006 and on the FIRST day of every month thereafter until the FIRST day of JUNE, 2011, I will pay only the interest on the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the FIRST day of each month beginning on JUNE 01, 2006.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 01, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404
or at a different place if required by the Note Holder.

MULTISTATE ADJUSTABLE RATE NOTE – Single Family

Page 1 of 6
BS899N (0201)                    VMP MORTGAGE FORMS – (80
MGN1 03/28/06 1:18 PM 



(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,631.11 . This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the FIRST day of MAY, 2011 , and on that day every 12TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:
THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL. THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the ☐ Nearest ☒ Next Highest ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT ( 0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
☒ The "Interest-Only Period" is the period from the date of this Note through MAY 01, 2011 . For the Interest-Only Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.
The "Amortization Period" is the period after the Interest-Only Period. For the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes
*(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)*
☐ (1) There will be no maximum limit on interest rate changes.

☐ (2) The interest rate I am required to pay at the first Change Date will not be greater than _____ % or less than _____ %.

☐ (3) My interest rate will never be increased or decreased on any single Change Date by more than _____ percentage points ( _____ %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than    11.875    %, which is called the "Maximum Rate."

☐ (5) My interest rate will never be less than _____ %, which is called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than    11.875    % or less than    2.250    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points (    2.000    %) from the rate of interest I have been paying for the preceding period.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENTS WITHOUT PAYING A PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THE NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATE OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES. IF THE PARTIAL PREPAYMENT IS MADE DURING THE PERIOD WHEN MY MONTHLY PAYMENTS CONSIST ONLY OF INTEREST, THE AMOUNT OF THE MONTHLY PAYMENT WILL DECREASE FOR THE REMAINDER OF THE TERM WHEN MY PAYMENTS CONSIST ONLY OF INTEREST. IF THE PARTIAL PREPAYMENT IS MADE DURING THE PERIOD WHEN MY PAYMENTS CONSIST OF PRINCIPAL AND INTEREST, MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY MONTHLY PAYMENTS AFTER THE FIRST CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. HOWEVER, ANY REDUCTION DUE TO MY PARTIAL PREPAYMENT MAY BE OFFSET BY AN INTEREST RATE INCREASE.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     2.0     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(B) BELOW SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. AS USED IN THIS SECTION 18, "INTEREST IN THE PROPERTY" MEANS ANY LEGAL OR BENEFICIAL INTEREST IN THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THOSE BENEFICIAL INTERESTS TRANSFERRED IN A BOND FOR DEED, CONTRACT FOR DEED, INSTALLMENT SALES CONTRACT OR ESCROW AGREEMENT, THE INTENT OF WHICH IS THE TRANSFER OF TITLE BY BORROWER AT A FUTURE DATE TO A PURCHASER.

IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT, LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. HOWEVER, THIS OPTION SHALL NOT BE EXERCISED BY LENDER IF EXERCISE IS PROHIBITED BY APPLICABLE LAW.

IF LENDER EXERCISES THIS OPTION, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION. THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN IN ACCORDANCE WITH SECTION 15 WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THIS PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER NOTICE OR DEMAND ON BORROWER.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____*Maggie H. Baird*_____ (Seal)
MAGGIE H. BAIRD                                    -Borrower

_____*Barry Baird*_____ (Seal)
BARRY BAIRD                                        -Borrower

_____ (Seal)
                                                   -Borrower

                    PAY TO THE ORDER OF
              _____
              WITHOUT RECOURSE                     (Seal)
              BANK OF AMERICA, N.A.                -Borrower
              BY: *Christina M Schmitt*
                  CHRISTINA M. SCHMITT
                  ASSISTANT VICE PRESIDENT         (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

(Sign Original Only)

BS899N (0301)
MGN2 03/28/06 1:18 PM                    Page 5 of 5

## Schedule B - Legal Description

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, lying and being in the Town of Babylon, County of Suffolk and State of New York, known and designated as lots nos. 271 to 275 inclusive, as shown on certain map entitles, "Map of Deer Park Gardens, Section 2" and filed in the office of the clerk of the County of Suffolk on March 11, 1927, said lots being bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Nicolls Road with the easterly side of Totten Avenue;

RUNNING THENCE along the southerly side of Nicolls Road, north 33 degrees 38 minutes east, 100 feet;

THENCE south 08 degrees 01 minute 40 seconds east, 100.04 feet to Lot No. 276;

THENCE along Lot No. 276, south 83 degrees 38 minutes west, 102.90 feet to the easterly side of Totten Avenue;

THENCE along the easterly side of Totten Avenue, north 06 degrees 22 minutes west, 100 feet to the point or place of BEGINNING.

## Schedule C-Defendants

Barry Baird                                  Borrower

Maggie H. Baird AKA Maggie Baird              Borrower

## Schedule D – Defendants

| | |
|---|---|
| Commissioner of Social Services of Suffolk County | Holder of a mortgage recorded in the Suffolk County Clerk's Office on December 30, 2011 at Book. 22153, page 828 |
| Clerk of the Suffolk County Traffic & Parking Violations Agency | Holder of a lien, see attached |



# Suffolk County Clerk's Office
## JUDGMENT - RETRIEVAL REPORT

10/16/2017   4:31:43 pm

**General Info for**  Doc Date: 12/5/2016   Seq #: 996   Doc Type: 1ST DISTRICT RED LT

| INDEX # | DT PERFECTED | COURT | COUNTY | SHERIFF | FEES | AMOUNT ($) | COST ($) | TOTAL ($) | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| S16-0002301 15 | 12/5/2016 | SCTPVA | SUFFOLK COUNTY | N | | 105.00 | 0.00 | 105 | |

### Debtor Info

| Last Name | First Name | Type | Street # | Street name | Street Type | Addr2 | Addr3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| BAIRD BARRY J | | | | 1724 WDNG RVR MNR RD | | | | WADING RIVER | NY | 11792 |

### Creditor Info

| Last Name | First Name | Type | Street # | Street name | Street Type | Addr2 | Addr3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| CLERK OF THE SUFFOLK COUNTY TRAFFIC & PARKING VIOLATIONS AGENCY | | | 100 | VETERANS MEMORIAL | HWY | | | HAUPPAUGE | NY | 11788 |

### Attorney Info

| Name | Street # | Street name | Street type | Addr2 | Addr3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| SUFFOLK COUNTY ATTORNEY | 100 | VETERANS MEMORIAL | HWY | | | HAUPPAUGE | NY | 11788 |